The judgment of the court was pronounced by
Preston, J.
The petitioner presented himself at the polls in the parish of St. Mary, on the 7th of November, 1848, and offered to vote at an election of Electors of President and Vice-President of the United States. His vote was challenged, on the ground that he had sent a challenge to fight a duel since the adoption of the New Constitution. The oath prescribed by the 12th section of the act approved the 1st of June, 1846, was tendered to him by the commissioners of election. He declined taking the part of the oath that he had not sent a challenge to fight a duel with deadly weapons with a citizen of this State since the adoption of the Constitution; and thereupon, in pursuance of the 13th section of the act, his vote was not received.
He sues the commissioners of the election for damages, on the ground that the 12th and 13th sections of the act “for the uniform regulation of elections in the State of Louisiana,” are unconstitutional, and therefore inoperative, null and void. There is no doubt, for the contrary is not suggested, that the commissioners of election honestly and truly believed these sections of the law constitutional and valid. They are not, therefore, liable for carrying the law into effect, even if subsequent investigation should lead to the decision 'that the law is unconstitutional. The condition of a public officer would be hard indeed, if, while he followed the very dictate of a statute, believing it to be constitutional, and which had not been the subject of judicial investigation and decision, he should be condemned to pay damages for so doing, even if the statute should be subsequently considered unconstitutional by the judiciary. Laws are the will *581 of the people, expressed through their legislative representives. Now, we find no statute or article of the code to the effect that damages should be inflicted under the circumstances of the present case. We have, then, to ask ourselves, in the absence of express law, what equitably is the will of the people in such a case. The best means of ascertaining it is to ask ourselves if the General Assembly would enact alaw to impose damages on the commissioners of elections under such circumstances. And the response of every man’s bosom must be, that the Legislature would not, if it were proposed, enact a law inflicting damages upon the commissioners of .elections for carrying into effect an express statute which they believed to be-.constitutional, even though it.shonld be subsequently decided that the law was unconstitutional. We are of opinion, however, that the sections of the law requiring the oath against duelling, and directing the vote of a citizen not to be received on a refusal to take the oath, are not unconstitutional, but wise provisions to carry the letter and spirit of the Constitution into effect.
The argument to the contrary is, that the 130th article of the Constitution directs that duellists shall be deprived of holding any office of trust or profit, and of enjoying the right of suffrage under the Constitution; that to effect this object an official oath is prescribed by the Constitution to officers to exonerate themselves from the disqualification, but that no oath is prescribed by the Constitution to the citizen to exonerate himself from the disqualification to exercise the right of suffrage; and therefore, it was the intention of the framers of the Constitution that no such oath should be prescribed by the Legislature, and that to require it violates another constitutional provision, that no man shall “ be compelled to give evidence against himself.”
This last clause of the Constitution, invoked by the counsel of the plaintiff, is expressly limited in its application to criminal prosecutions, to which the examination of the qualifications of a voter at an election cannot be assimilated. And a man disqualified from voting is not compelled to approach the polls to deposit an unconstitutional vote, and is not therefore “compelled” to prove his disqualification. Nor did the Convention manifest its intention, by prescribing the clauses in the official oath against duelling, that the Legislature should not require the oath of the citizen to the same effect, in order to exercise the right of suffrage. The 130th article qf the Constitution, excluding duellists from offices of trust and profit and the right of suffrage, was all that strictly belonged to the organic law of the State. But the Convention deemed it so important, that they, in some degree, legislated to effect their object so far as to prescribe that officers should exonerate themselves from the disqualification by their official oaths. But as to the right of suffrage; the Convention merely directed for wise purposes, that the duellist should not exercise the light of suffrage, very properly leaving to the Legislature to devise and prescribe the modes of preventing it. The Convention, however, imposed this injunction on the Legislature: “The privilege of free suffrage shall be supported by laws regulating elections and prohibiting, under adequate penalties, all undue influence thereon, from power, bribery, tumult, or other improper practice,” which all think requires the Legislature to pass laws to protect all entitled to vote in the enjoyment of the right of suffrage, and also, reasonable laws to prevent those who are not entitled to vote, from voting. And as the Convention resorted to the oath of officers to exonerate themselves from the disqualification of duelling, it was reasonable in the Legislature to resort to the oath of the citizen, in exercising the right of suffrage, to exonerate himself from the same disqualifications.
*582 Previously to the adoption of the New Constitution, a very great evil existed in this State. Men perhaps of inferior minds and acquisitions, and not superior in real courage, often endeavored to drive from the polls, and from the service of the State, their superiors in every virtue, by challenging them to physical combats. Any pretext was seized upon for this purpose, and men of talents and virtue were often unwilling to expose themselves to deadly combats, even to attain the station of usefulness to which their talents and virtue entitled them. It was, however, perfectly well known from experience, that men could not be convicted of any offence for assaults, maims or homicides perpetrated in duels. This had been often tried without effect. The Convention therefore determined to arrest this great evil, and correct this vicious state of society by other means, which in other States had proved effectual, and has so far been attended in this State with the same highly beneficial result. The Convention determined that no person should hold office who violated the laws against duelling; and to effect the object of this determination, prescribed that all officers should exonerate themselves by their official oath. Still, the evil would exist as to those who, without aspiring to office, wished to exercise the right of suffrage. To remedy it, the Constitution prescribed that a citizen of this State who shall fight a duel with deadly weapons with a citizen of this State, or send or .accept a challenge, &c., shall be deprived of the right of suffrage under this Constitution.
The Constitution had already enjoined, that laws should be made to exclude from the right of suffrage persons convicted of bribery, perjury, forgery, and other high mines and misdemeanors. But it was felt and known that persons could not be convicted of duelling. Wherefore, by a subsequent clause in the Constitution, the fact of duelling was made a disqualification to enjoy the right of suffrage. A manifest distinction was made between the fact and the conviction of the offence. As to infamous offences, it was known that a conviction could be easily effected by prosecution, and, therefore, a conviction was required to disqualify the citizen. As to the offence of duelling, it was known that a conviction could not be effected by prosecution, because all prosecutions for the offence had failed. Therefore, the Convention declared, that the fact of duelling should be a disqualification to enjoy the right of suffrage, and left it to the Legislature to devise the means of enforcing the disqualification. The Legislature, by the act of 1846, prescribed the oath of the party, as a means of ascertaining the disqualification.
When a citizen claims a right, it is proper that he should show himself qualified to exorcise that right; if this qualification is denied, or disqualification is alleged, and to show his right, it is certainly very reasonable to refer the matter to his own testimony. He is not called upon to testify against himself, which is only forbidden in criminal prosecutions, but claiming a right, the claim is referred to his own conscience. He can put his vote into the box if he has not sent a challenge. He violates the Constitution, the laws, and the rights of his fellow citizens if he puts it into the box, having fought a duel or sent or accepted a challenge since the adoption of the Constitution, because our citizens have agreed by their organic law, which all are bound most sacredly to obey, that the citizen who fights a duel with a citizen, or sends to or accepts a challenge from a citizen, shall not enjoy the right of suffrage.
It is decreed that the judgment of the district court be affirmed, with costs.